## GERRISH v. STATE OF NEW HAMP-SHIRE et al.

### No. 814.

United States District Court
D. Maine, S. D.

May 11, 1951.

528

Frederick Gerrish, pro se.

CLIFFORD, District Judge.

This matter comes before me upon the Petition of Frederick Gerrish for Writ of Habeas Corpus in which he alleges that he is restrained in the custody of Willard Pease, Warden of Knox County Jail at Rockland, Maine.

An original petition was received in this Court on April 26, 1951. Three days later a letter was received from petitioner stating that he had secured counsel to represent him, and believed that his attorney desired to discontinue the case for about ten days. As a result of this letter the attorney was contacted by telephone, and in the course of the conversation it was agreed that no action be taken on the petition until receipt of further word from petitioner or his attorney. On May 8, 1951 this Court received a letter from petitioner stating that he was filing a supplementary petition for writ of habeas corpus and requesting that it be considered as the original, the letter also stating that the attorney previously referred to would not represent him in this Court. The second application for writ of habeas corpus was received on May 9, 1951.

It referred to the previous petition and the letter requesting that no action be taken on said petition for ten days. It also states that new developments had taken place; that the new petition more fully described the situation; and requested that the new Petition for Writ of Habeas Corpus be considered as an original petition. Since the second application received May 9, 1951, includes all of the allegations contained in the first application, this Court feels that the only proper petition for Writ of Habeas Corpus pending at this time is the petition filed on May 9, 1951.

Petitioner alleges that he is presently confined in the Knox County jail at Rockland, of which Willard Pease is the Warden, upon a fugitive from justice warrant under the name of alias Theodore Thomas Kantak, on behalf of the State of New Hampshire; that his imprisonment is illegal and unlawful in that petitioner was arrested by presentation of a fugitive from justice warrant which is false and fraudulent as to the facts upon which it stands, being based upon deception, fraud, and persecution practiced upon petitioner; that the prosecuting officers of the State of New Hampshire and Maine, as well as the administrative officers of these States have purposely and intentionally violated the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Federal Constitution; that the application for extradition was not made pursuant to the Uniform Criminal Extradition Act of Maine, R.S.1944, c. 139, § 1 et seq., but in gross violation thereof, by presentation of a warrant from the Merrimack County Superior Court of New Hampshire, knowing the same to be false and fraudulent; that petitioner is not a fugitive from justice and is innocent of the crime for which he was arrested and convicted in the Grafton County Superior Court of New Hampshire; the petitioner is innocent of any crime; that at the trial fraud was practiced upon the Court and petitioner in that the prosecuting officials introduced evidence knowing the same to be false and fraudulent; that fraud was practiced upon the Court and petitioner at the trial in that the prosecuting officials knowingly and fraudulently destroyed and

concealed evidence which was favorable to the petitioner; that on October 9, 1944, in the Superior Court at Woodsville, County of Grafton, State of New Hampshire, he was forced to defend charges before a hand-picked jury and was found guilty of breaking and entering and larceny; that petitioner had not been legally indicted and did not have the assistance of counsel for his defense in that the prosecuting officials and jailers deprived him of the right to secure counsel to defend him at his trial, and to secure witnesses to testify in his favor; that although petitioner had money and was willing to pay for his attorney, he was deprived of his right to employ counsel by force and violence, and by one Alex Page of Woodsville, N. H. threatening him with a gun; that he was deprived of his right to trial by an impartial jury in that petitioner was not allowed to cross-examine "the jurymen which were hand-picked"; that the presiding judge failed to protect petitioner's right to a fair trial by allowing considerable inadmissible, hearsay, and otherwise incompetent evidence to go in without any objection by the Court; that several witnesses who testified against him were compelled to do so by certain police authorities of Grafton County, and that the testimony of the coerced and intimidated witnesses was material, resulting in his conviction, while in truth and fact the testimony was wholly false and perjured which was known by the prosecuting authorities; that fraud was practiced upon the petitioner by the prosecuting officials and State authorities of the State of New Hampshire, who willfully and deliberately deprived petitioner of due process of law in that several complaints and petitions to secure redress from an unlawful imprisonment were suppressed, concealed, and destroyed; and that fixing, wire-pulling, force and intimidation were practiced upon petitioner and upon the people of New Hampshire in collusion with certain State officials of the State of Maine; that following conviction and imprisonment at the New Hampshire State Prison, petitioner was the victim of cruel, barbaric and inhuman treatment at the hands of his jailers, to the extent that his life and health were put in grave jeopardy; that several attempts against petitioner's life were made by his jailers, with the assistance of others who attempted to apply drugs to his food; that for a period of thirty days he was forcefully kept in a dark room, naked, on bread and water, and forced to sleep on a cement floor; that these acts were forced upon your petitioner as a threat to compel him to withdraw his complaint and petition to secure redress from an unlawful imprisonment; that he was committed to the New Hampshire State Hospital contrary to law and was there held incommunicado for a period of ten months, thereby obstructing law and justice and a proper investigation of graft, fraud and corruption existing in the institution and in the government of the State of New Hampshire; that in the event petitioner is returned to New Hampshire there is danger that he will meet death by violence and be so brutalized or tortured by his jailers that he will succumb; and that on April 22, 1951 petitioner was threatened with such dire consequences by certain New Hampshire State officials who visited him at the Knox County Jail.

Petitioner cites the case of Johnson v. Dye, Warden, 175 F.2d 250, which was decided by the United States Court of Appeals for the Third Circuit on May 17, 1949. It would appear that petitioner greatly relies upon the case of Johnson v. Dye, since in the wording of his allegations, he frequently uses the exact words contained in the Johnson petition. However, petitioner may not have been aware of the fact that the United States Supreme Court reversed the decision in the case of Johnson v. Dye, the reversal appearing per curiam in 1949, 338 U.S. 864, 70 S.Ct. 146.

This Court is in accord with the decision in the case of Johnson v. Matthews, United States Marshal, 86 U.S.App.D.C. 376, 182 F.2d 677, decided by the United States Court of Appeals, District of Columbia Circuit, on May 1, 1950. In that case petitioner was apprehended in the District of Columbia as a fugitive from justice from the State of Georgia. Following his arrest, and after hearing, his delivery was ordered to an agent of the State of Georgia. He then presented a petition for writ of habeas corpus in the United States District Court for

the District of Columbia and alleged in his petition that he had been arrested and jailed in Georgia for robbery; that for ten months he was given no preliminary hearing, indictment or trial; and that he thereupon escaped. He further alleged that during his incarceration elected local officials "expended every effort" to obtain a sum of money from his wife; that during those months he was moved to three jails where he was the victim of cruel, barbaric and inhuman treatment, in that he was most severely beaten, starved, and denied clothing or bedding by his jailers, placing his life and health in grave jeopardy. He alleged violations of the Fourteenth Amendment to the Constitution of the United States and certain sections of the Constitution of Georgia. On argument he claimed violation of the Sixth Amendment and of the Bill of Rights generally. The District Court denied the petition after hearing oral argument but declining to hear evidence upon the facts alleged as to the treatment in Georgia. The appeal followed.

The United States Court of Appeals, District of Columbia Circuit, affirmed the judgment of the District Court, and in the Opinion, stated in part, as follows:

"*Habeas corpus* is the proper process for testing the validity of the arrest and detention by the authorities of the asylum state for extradition purposes. But a petition for a writ for that purpose tests only that detention; it does not test the validity of the original or the contemplated incarceration in the demanding state. * * *

"The question before us is whether a court (either state or federal) in the asylum state can hear and determine the constitutional validity of phases of the penal action by the demanding state in respect to the fugitive or his offense. We think that it cannot do so. Authorities, sound theory of government, and the practical aspects of the problem all require that conclusion." 182 F.2d at page 679.

"Of course, appellant has a right to test in a federal court the constitutional validity of his treatment by Georgia authorities. But that test cannot come as a part of the constitutional process of returning a fugitive to the state where he is charged. If the fugitive's constitutional rights are being violated in Georgia, he can and should protect them in Georgia. Not only state courts but a complete system of federal courts are there." 182 F.2d at page 680.

"Appellant cites the authorities which hold that if the facts alleged in a petition for *habeas corpus* are such that, if established, they would require issuance of the writ, he must be afforded opportunity to prove his allegations. We do not deviate from that rule or qualify its unequivocal terms. But, if this appellant proved the facts he alleges in respect to the penal practices of the State of Georgia, he would not be entitled to an order of the federal District Court in this jurisdiction releasing him from a custody which is for extradition purposes only. This District Court has no power to consider and determine the constitutional validity of executive or judicial processes of the State of Georgia. Another court, not this one, has that power." 182 F.2d at pages 681, 682.

"We find ourselves in disagreement with the United States Court of Appeals for the Third Circuit in its opinion in Johnson v. Dye." 182 F.2d at page 684.

As previously stated, the decision in the case of Johnson v. Dye was reversed by the United States Supreme Court. Moreover, certiorari was denied by that Court in the case of Johnson v. Matthews, 1950, 340 U.S. 828, 71 S.Ct. 65. Davis v. O'Connell, 8 Cir., 1950, 185 F.2d 513, reaches the same conclusion as Johnson v. Matthews, supra.

The opinion in the case of Johnson v. Matthews, 86 U.S.App.D.C. 376, 182 F.2d 677, is rather lengthy, and only parts of that Opinion have been quoted above. However, this Court is fully in accord with the entire Opinion, including the unquoted as well as the quoted paragraphs.

In the present case, petitioner further alleges that he was deprived of and denied equal protection of the law by the State of Maine, through collusion, trickery and gross laxity in that petitioner was not granted a hearing on the complaint and fugitive of justice warrant on which he was arrested and imprisoned.

It has been generally accepted that habeas corpus is not available in extradition proceedings, except for limited purposes. It is the opinion of this Court that the pending petition does not include any allegations coming within that limited scope. Practically all of the allegations of the petition are covered by the Opinion in the case of Johnson v. Matthews.

The only remaining allegation to be answered is that petitioner was not granted a hearing on the complaint and fugitive from justice warrant, on which he was arrested and imprisoned. This point was discussed in the opinion of the United States District Court for the District of Nebraska, Omaha Division, in the recent case of Collins v. Golden, 95 F.Supp. 251, decided on February 6, 1951. In that case, the Court states in part as follows: "As a general rule, for the issuance of a warrant of arrest for extradition purposes no notice to the accused is necessary, Marbles v. Creecy, 215 U.S. 63, 30 S.Ct. 32, 54 L.Ed. 92, and he has no right to a hearing before the governor of the asylum state. Munsey v. Clough, 196 U.S. 364, 372, 25 S.Ct. 282, 49 L.Ed. 515." 95 F.Supp. at page 253.

The governor of the asylum state may determine without hearing whether the person whose extradition is demanded is substantially charged with crime, and if alleged fugitive considers himself aggrieved by the order, he may obtain a hearing upon writ of habeas corpus which may be allowed either by a state or federal court. 18 U.S.C.A. § 3182; 28 U.S.C.A. § 2253; See U. S. ex rel. Darcy v. Superintendent of County Prisons of Philadelphia, 3 Cir., 111 F.2d 409.

The petition in the present case was accompanied by a petition for leave to proceed in forma pauperis. Both petitions were improperly drafted in many respects. However, the petitions were apparently drafted by the petitioner himself, in his own handwriting, and this Court does not desire to take advantage of any legal technicalities with which petitioner may be unfamiliar. The Court has rather addressed itself to the allegations contained in the petition and feels that the petition itself does not make out a case which would warrant petitioner to be brought before this Court for hearing.

It is hereby ordered that leave be and hereby is granted to file the petition in forma pauperis.

It is hereby further ordered, adjudged and decreed that the application for Writ of Habeas Corpus be, and hereby is

Denied.