AMERICAN SAMOA GOVERNMENT

v.

MICHAEL AGASIVA, Defendant

High Court of American Samoa
Trial Division

CR No. 5-87

October 14, 1987

Before .KRUSE, Associate Justice, and VAIVAO, Associate Judge.

Counsel: For the Government, William Van
Hook, Assistant Attorney General
The Defendant appeared pro se

Opinion and Order on Motion for Reduction or Modification of Sentence:

Defendant, Michael Agasiva, prepared and filed pro se a pleading styled "Motion for Reduction and/or Modification of Sentence". Amid the grounds asserted on the motion, the defendant alleges: the ineffective assistance of counsel; deprivation of his first amendment right to freedom of religion; discriminatory and ill treatment at the Correctional Facility; cruel and unusual punishment; and excessive sentence.

It will be noted that a prior motion for reduction of sentence has been made by defendant in this matter and was denied. Ordinarily, the succeeding motion before us should be summarily denied. However, after taking into account the circumstances of the motion in the light of TCRCP Rule 8(f), which requires the Court to construe pleadings so "as to do substantial justice", we

33

have approached the motion as a petition for habeas corpus relief to permit a collateral review of defendant Agasiva's allegations. This flexible approach to construction takes on greater importance when the pleadings come from the cell of a pro se defendant rather than from the pen of a schooled attorney. See Gordon v. Leeke 574 F.2d 1147, 1151 (4th Cir. 1981). The federal courts have specifically authorized the treatment of pleadings attacking conditions attendant to prosecution and imprisonment as habeas petitions raising constitutional issues meriting habeas corpus review. See, e.g., Coronado v. United States Bd. of Parole, 540 F.2d 216 (5th Cir. 1976).

Agasiva's motion alleges ineffective assistance of counsel on the ground that his trial attorney failed to file a timely appeal as he had requested of counsel. If factually correct, such a failure would deny the criminal defendant effective assistance of counsel in violation of the sixth amendment to the United States Constitution. Perez v. Wainwright, 640 F.2d 596 (5th Cir. 1981) cert. denied, 456 U.S. 910 (1982). Three important principles emerge from the decision in this case. First, failure to follow a defendant client's request to appeal his conviction amounts to constitutionally ineffective representation. Second, the defendant is entitled to habeas corpus relief in this instance without having to show prejudice or the doubtfulness of his guilt. Third, under such circumstances, the defendant should be permitted to submit an out-of-time appeal. Id. at 598-99. See also Sapp v. Wainwright, 433 F.2d 317 (5th Cir. 1970).

This is notwithstanding an opinion by trial counsel that the appeal lacks legitimate grounds. Anders v. California, 386 U.S. 738 (1967), a Supreme Court decision discussed in this context more fully in Cannon v. Berry, 727 F.2d 1020 (11th Cir. 1984), requires of counsel who feels that an appeal is frivolous to so advise the Court and request permission to withdraw. Counsel is further required to file a brief pointing out any contents of the record that could conceivably support an appeal. Thus the Court becomes the arbiter of whether the appeal is frivolous and may thus be forborne, or whether it bears prosecuting and requires the effective assistance of counsel.

On this ground alone, the Court was able to issue a writ to the executive branch to produce the defendant in order to permit an evidentiary inquiry into his allegations. Defendant's _pro_ _se_ motion for reduction and/or modification, filed within the 120 day period permitted under T.C.R.Cr.P. Rule 35, was sufficient under _Sapp_, _supra_, to identify and protect his efforts to obtain post-verdict relief and to overcome his failure to file a timely appeal.

At the hearing herein, Agasiva advised the Court that he did not wish to pursue an appeal[1] and the Court, after advising the defendant on several occasions about the availability of relief upon satisfactory showing, was satisfied that Agasiva has knowingly abandoned pursuing the availability of appeal.

We look to the remaining allegations of defendant:

Agasiva also complained of counsel for failing to inject a defense of "intoxication" provided under A.S.C.A § 46.3214. This complaint lacks merit, as the defense goes to "negative the existence of mental states of purpose or knowledge when those mental states were elements of the offense charged or of an included offense". Agasiva was convicted of manslaughter, an offense whose elements do not include "purpose" or "knowledge."

Unlike the situation in _Perez_ (failing to file a timely appeal requested), where counsel's conduct is presumed prejudicial, the ground of failing to

---

[1] Defendant's purpose in raising the failure to appeal does not apparently seek reinstatement of an appeal opportunity out of time as a cure or remedy to his asserted prejudice. Rather, the alleged failure is being solely advanced to the trial court for its consideration in the hope of some sort of offset prejudice value to be applied in favor of sentence reduction. Such a ground is of course without merit. As the defendant does not seek an appeal opportunity, we need not pursue the evidentiary hearing on the merits of the allegations concerning the failure to file timely appeal.

35

raise a defense is not prejudicial _per se_. Proof therefore that the alleged omission of counsel fell below the sixth amendment standard of effective assistance, is required. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>United States v. Cronic</u>, 466 U.S. 648 (1984). For reasons given, such ground, and therefore proof, is not available as a matter of law in this defendant's case.

We turn to defendant's post-conviction complaints.

Defendant excepts to being forced to participate in prayer sessions imposed by the prison authorities on all inmates. The evidence herewith was not in dispute. The testimony was that after reveille each morning, a prayer session was held and every inmate was required to attend, without exception. Similarly, other religious sessions were imposed at general assembly, and those inmates who did not cooperate were known on occasions to be placed in holding cells. (Holding cells are not the best in accommodation at the prison.) The warden, while testifying that he took corrective action with regard to the holding cell as alternative to prayer, stated that he supported the general prayer sessions as conducive to rehabilitation goals.

Defendant, on the other hand, complains that he is Catholic by persuasion and while he earnestly participates in programs which the Catholic Church has in connection with the facility, he has strong objections to forced interdenominational religious activity.

The very first section of the territorial Bill of Rights (Rev. Const. Am. Samoa art I, § 1) contains an establishment clause and a freedom of religion clause similarly contained in the federal Constitution. Little need be said that the blanket imposition of religious programs upon nonconsenting inmates is hopelessly violative of the constitution. <u>Cooper v. Pate</u>, 378 U.S. 546 (1964). Accordingly, relief shall be granted as hereinafter appearing.

Defendant further complains of conditions permitted at the Correctional Facility which place him in constant fear for his life. Defendant, on his behalf and the behalf of other inmates, complained about the free integration of one

36

inmate, Afoa Mata'itusi, with the rest of the inmate population. Testimony was to the effect that Afoa was the institutional bully invested by the administration with a badge of authority by the creation of a "matai" system at the Correctional Facility. This system was devised, also in the name of rehabilitation goals, to inculcate with the inmates the traditional notions of respect for the elders. The said Afoa was one of three or four persons given recognition with matai status, with each such matai assigned jurisdiction over a particular group of inmates. These so-called matai were the inmate liaison with the administration, and were responsible for such things as assigning work detail. According to defendant, the matai influence of this Afoa was even more pervasive. Afoa controlled inmate sporting activities, had a nursery business, and was permitted to market his plants during work detail outside the facility utilizing a government vehicle. He is also said to have usurped and displaced another inmate entrepreneur's business of retailing convenience items to inmates.

The underlying cause of defendant's complaints is that, given this influence and while currying favor with the administration, Afoa is a known dangerous felon.

Our review of the Court's files on inmate Afoa lends much credence to the fears expressed by defendant. Afoa was convicted and sentenced by this Court to imprisonment on June 28, 1978, for a term of fifteen years without work release for the crime of rape. The Court recommended that if Afoa be paroled he be deported immediately to Western Samoa. The sentencing court had before it a lengthy record of Afoa with the criminal justice system in Western Samoa. The presentence report concludes with the recommendation: "To safeguard the lives of others in the Community as well as inmates," defendant be incarcerated for fifteen years without release for any purpose and that the defendant be segregated from the rest of the inmates.

On July 5, 1978, the said Afoa was convicted of murder in the second degree after viciously killing another inmate at the Correctional Facility. He was sentenced to imprisonment for a period of forty-five years to be served consecutively with the sentence for rape. The

court further prohibited work release and recommended, if possible, extra-territorial confinement in either a state or federal penitentiary.

Much of the foregoing record was known to defendant Agasiva, and he testified that Afoa in the attempt to assert his authority, or pule, has verbally threatened him with his life on several occasions, even in front of guards. His complaints to the administration are to no avail.

On the other hand, the Warden presented himself as a character witness for inmate Afoa. In his opinion, the dangerously disruptive element at the facility has been the defendant Agasiva. Agasiva is said to view himself as superior to everyone else because of his educational background, and he seeks treatment different from everyone else, demanding privileges which everyone else must otherwise earn. By comparison, Afoa is held out as a model inmate. The confrontations highlighted by Agasiva are confrontations generated by Agasiva. The Warden denies any knowledge of a retail outlet undertaken by Afoa, but states that the nursery enterprise operated by Afoa has been sanctioned by his superior, and that the proceeds from the nursery are shared by Afoa and his inmate aiga for the purchase of toiletries. Afoa is seen to be the model for rehabilitation while Agasiva is seen to be disruptive of everything that is rehabilitative.

The court is mindful that habeas corpus is not available to the judiciary to review prison management and the nature and condition of a prisoner's otherwise lawful confinement. It is not the Court's business to superintend the administration of the prisons, which is properly left to prison officials. However, habeas corpus is appropriate to review unconstitutional actions of prison officials and may be available in "exceptional circumstances rising to the level of constitutional deprivation." See generally 39 C.J.S. Habeas Corpus, § 96 et. seq.

With all due respect to the Warden and his judgment, and while giving him credit for daily and firsthand observation of the circumstances at the Correctional Facility, this Court has great difficulty in accepting the conclusion that inmate Afoa does not present a clear danger to the

38

defendant and other inmates. Afoa's record reveals the potential for viciousness and the concerns of the sentencing court are proving just as valid today as they were in 1978. According to the testimony, Afoa recently struck another inmate on the face with a piece of 2 x 4 lumber. (The Warden has dismissed this incident as having been fully settled.) He punched another with a rock. He openly threatened to cut up another prisoner. The instrument used in the killing for which Afoa was convicted was a bush knife, and testimony had it that Afoa has ready access to such knives. He makes a point of being visible with a bush knife when his pule as a matai is challenged. He has threatened this defendant on different occasions.

We find substance in the fear expressed by the defendant.

In Coffin v. Reichard, 143 F.2d 443, 445 (6th Cir. 1944), cert. denied, 325 U.S. 887 (1945), the court held that: "A prisoner retains all rights of an ordinary citizen except those expressly or by necessary implication taken from him by law, which rights include the right to personal security against unlawful invasion." The Court further noted that while the government had the absolute right to hold a convicted prisoner, it also had the correlative duty to protect that prisoner against assault and injury. A prisoner is thus entitled to habeas corpus when, although lawfully in custody, he is deprived of some right to which he is lawfully entitled even in confinement, the deprivation of which serves to make his imprisonment more burdensome than the law allows or curtails his liberty to a greater extent than the law permits. Id. at 445.

We conclude on the facts that inmate Afoa presents a real danger to the defendant (and to quote defendant) from a "physiological and psychological perspective". We find defendant's fears to be objectively demonstrated and they give rise to the situation whereby his term of imprisonment is made more burdensome than the law allows. Inmate Afoa is not only a dangerous felon, but he actively trades on his reputation in order to instill fear and to manipulate a following with certain of the inmate population. His potential for violence is exacerbated and perhaps encouraged with the ostensible imprint of official sanction

connected with his being given the cognizance of a matai.

Relief is accordingly appropriate in this matter to reinstate defendant's imprisonment, exclusive of the added burdensome fears for his safety.

Defendant Agasiva's other grounds for relief are without merit.

The court does not find that road work detail is "cruel and unusual punishment."

We further do not find that defendant is being discriminated against with regard to provisional release programs. Agasiva's complaints of discriminatory treatment are that other inmates are entitled to provisional release while his requests have been denied. These are matters properly left to the administration of the Correctional Facility. At the same time, we find no evidence of arbitrariness directed against the defendant Agasiva. His evidence was that inmate Afoa has been given road detail release, weekend leave, etc., in contravention of the sentence order of the criminal trial court. In our view, this was not a product of discriminatory preference, but managerial neglect. As the evidence showed, Afoa was somehow placed on the release programs long before Warden Tuiteleleapaga assumed the running of the Correctional Facility, and every other succeeding warden after this fact has merely followed suit in the assumption that Afoa was properly eligible for release privileges. As a management shortcoming, the facility's officialdom will need to take appropriate corrective measures to comply with a final order of the Court which is still in full force and effect.

At the end of defendant's entreaty is a further request to reduce or modify sentence. This Court remains affirmed that sentence imposed herein was appropriate having regard to the nature and circumstances of the offense as well as defendant's background as required by A.S.C.A. § 46.1910. Essentially, defendant seeks to highlight his background as being very amenable to rehabilitation. But that is only part of the picture the Court must look at. We looked also to the "nature and circumstances of the offense" in this case and the facts then before us at

**sentencing.** The Court was then also moved to **consider** a competing and equally important sentencing factor. That is "deterrence". The prospect for rehabilitation is a feature which logically follows the sentencing process but is properly under the auspices of the executive branch. The sooner defendant Agasiva comes to terms with the fact that rehabilitation programs are not in accordance with his own views and demands, but are in the hands of the appropriate law enforcement officials, the sooner he may be seen as amenable to rehabilitation programs. Our order denying sentence reduction entered July 14, 1987 remains unchanged.

CONCLUSION

The Court concludes on the foregoing as follows:

The defendant Agasiva shall remain in the custody of the American Samoa Government, Department of Public Safety, Territorial Correctional Facility subject to the following conditions. Defendant Agasiva shall not be required to participate in any religious programs at the Correctional Facility without his consent. He shall be permitted to participate in those religious programs of his own choosing as are ordinarily made available at the Correctional Facility to inmates of Agasiva's religious persuasion. Inmate Afoa Mata'itusi shall be segregated from defendant Michael Agasiva and in compliance herewith, defendant Michael Agasiva shall not as a result thereof be segregated from the remainder of the inmate population.

It is So ORDERED.

41